# EXHIBIT A

# State of Tennessee
## IN THE CHANCERY COURT FOR HAMILTON COUNTY

LAURA MEALEY,
**PLAINTIFF,**

VS.

ALDI, INC. and ALDI, INC. (TENNESSEE),
**DEFENDANTS.**

DOCKET NO. 2 ⁓ - c o 7 4

## SUMMONS

TO DEFENDANT:     **Service Via Certified Mail:**
**Aldi, Inc.**
**c/o Registered Agent: CT Corporation System**
**300 Montvue Road**
**Knoxville, TN 37919-5546**

You are summoned and required to Answer and make defense to a Complaint herewith served upon you. Your Answer to the Complaint must be filed and served upon plaintiff's attorney on or before thirty (30) days after service of this Summons and Complaint upon you, exclusive of the day of service. Your Answer must be filed in the OFFICE OF THE CLERK AND MASTER, 625 Georgia Avenue, Room 300 Courthouse, Chattanooga, Tennessee 37402. You are also required to serve a copy of your Answer upon the plaintiff's attorney, or the *pro se* plaintiff as set out below. If you fail to do so, judgment by default will be taken against you for the relief demanded in the Complaint.

ISSUED & TESTED this 2 7 day of _____January_____, 20 2 o.

ROBIN L. MILLER, CLERK AND MASTER

By: _____
DEPUTY CLERK AND MASTER

**Attorneys for Plaintiff:**

**Donna J. Mikel, BPR#020777**
**Mikel & Hamill PLLC**
**620 Lindsay St., Suite 200**
**Chattanooga, TN 37402**
**(423) 541-5400**

### NOTICE TO DEFENDANT(S)

Tennessee Code Annotated § 26-2-103 provides a $10,000.00 personal property exemption from execution or seizure to satisfy a judgment. If a judgment should be entered against you in this action and you wish to claim property as exempt, you must file a written list, under oath, of the items you wish to claim as exempt with the Clerk & Master. The list may be filed at any time and may be changed by you thereafter as necessary; however unless it is filed before the judgment becomes final, it will not be effective as to any execution or garnishment issued prior to the filing of the list. Certain items are automatically exempt by law and do not need to be listed; these include items of necessary wearing apparel (clothing) for yourself and your family and trunks or other receptacles necessary to contain such apparel, family portraits, the family Bible, and school books. Should any of these items be seized you, would have the right to recover them. If you do not understand your exemption right or how to exercise it, you may wish to seek the counsel of a lawyer.

A TRUE COPY
ROBIN L. MILLER, Clerk & Master
Chancery Court, Hamilton County, Tennessee
This 2 7 day of ___ 20 2 o
By: _____ DC&M

# SUMMONS RETURN

I received this summons on _____. I certify and return that on _____, I

<div style="margin-left:2em">(Date)</div>

☐ served this summons and a complaint on defendant, _____

<div style="margin-left:20em">(Printed Name of Defendant)</div>

in the following manner:

_____

_____

_____

☐ failed to serve this summons within thirty (30) days after its issuance because:

_____

_____

_____


_____       _____
Process Server Name (Printed)        Process Server Signature


_____
Address

_____

_____


[Form 114, Rev 2019.01.03]

# IN THE CHANCERY COURT OF HAMILTON COUNTY, TENNESSEE

LAURA MEALEY,                      )
    Plaintiff,                      )    NO. 20 - 0074
                                        )
vs.                                 )    JURY DEMANDED
                                        )
ALDI, INC. and                      )
ALDI, INC. (TENNESSEE),             )
                                        )
    Defendants.                     )

## COMPLAINT

Comes Plaintiff and sues Defendants Aldi, Inc. and Aldi, Inc. (Tennessee) (collectively referred to herein as "Defendants" or "Aldi") for damages up to $2,000,000[1] for retaliatory discharge and violations of the Tennessee Disability Act. Plaintiff would show unto the Court as follows:

## I. JURISDICTION

1. Jurisdiction of this Court is invoked pursuant to Tenn. Code Ann. §16-10-101, §8-50-103, and §4-21-311.

## II. NATURE OF PROCEEDING

2. This action is brought by Plaintiff to secure redress for common-law retaliatory discharge, violations of the Tennessee Disability Act, and, once ripe, violations of related federal law. This action seeks injunctive relief, compensatory damages, back pay, front pay, punitive damages, damages for humiliation and embarrassment, court costs, and all other relief to which Plaintiff may be entitled.

---

[1] Plaintiff includes this monetary demand because by law she is required to include a demand to set a ceiling for the damages she can recover in her lawsuit. In reality, her damages are difficult to calculate at this early juncture because they are dependent upon a number of facts that evolve over time and certain elements of damages are reserved for calculation by the jury.

## III. THE PARTIES

3.      Plaintiff is a resident of Hamilton County, Tennessee.

4.      Defendant Aldi, Inc. is a Tennessee corporation conducting business, among other places, in Hamilton County, Tennessee. Defendant's operations are sufficient to qualify it as an "employer" under the Tennessee Disability Act and all related laws.

5.      Defendant Aldi, Inc. (Tennessee) is a Tennessee corporation conducting business, among other places, in Hamilton County, Tennessee. Defendant's operations are sufficient to qualify it as an "employer" under the Tennessee Disability Act and all related laws.

6.      The acts complained of herein took place in Hamilton County, Tennessee.

## IV. FACTUAL BASES OF PLAINTIFF'S CLAIM

7.      Plaintiff was employed by Defendants as a store associate at Defendants' grocery store in Ooltewah, Tennessee from August 14, 2018, until her termination on September 20, 2019.

8.      On or about July 21, 2019, Plaintiff sustained a workplace injury, which was immediately reported to management.

9.      The injury Plaintiff experienced was to her hands. While working, they started to burn and tingle and then became numb. The sensation then moved up into Plaintiff's arm and she could not grasp an item. Her fingers also swelled and the muscle tendons in her thumbs began throbbing. Plaintiff believed this occurred because she was constantly using the cash register without being rotated off or taking required and requested breaks. She began having tingling and pain in her hands for several months before this more acute incident when she was working the register for long periods without breaks.

2

10.     Plaintiff asked if she could fill out a report concerning her workplace injury and Aldi did not have appropriate forms available. Rather, one of Plaintiff's supervisor asked her to dig through the office to try and find one and then another supervisor later criticized her, saying she used the wrong form. Just filling out the forms turned out to be a big debacle because Aldi did not have a clear policy/plan regarding reporting of comp injuries.

11.     Plaintiff sought medical treatment on July 25, 2019 for her injury and was diagnosed by a nurse practitioner as having carpal tunnel syndrome relating to the repetitive work Plaintiff performed on the cash register without receiving regular work breaks. This medical provider placed minor restrictions on Plaintiff, including that she be rotated off the register every 4 hours to get a break from the repetitive motion.

12.     Defendants' management made several disparaging comments about Plaintiff's workplace accident and her related restrictions.

13.     Defendants' management likewise refused to follow Plaintiff's restrictions at times and demonstrated a negative attitude about her restrictions.

14.     Plaintiff's claim was initially denied on August 12, 2019 by Defendants' insurer, Travelers. At that time, Defendants' manager, Mark Betz, told Plaintiff, "I want you to get those restrictions removed" and said he did not care how she did it.

15.     Prior to her workplace accident, Plaintiff enjoyed a positive rapport with Ms. Betz and frequently volunteered to take on extra shifts and work.

16.     Following her workplace accident, the behavior of Plaintiff's supervisors noticeably cooled toward her and she was subjected to heightened scrutiny.

3

17.     Plaintiff attempted to appeal the worker's compensation denial. When Travelers would not return her calls, Plaintiff had to involve a state worker's compensation ombudsman to assist her in ensuring that the claim was appealed.

18.     During that process, Plaintiff had to engage in numerous attempts to contact Travelers. She was finally able to reach Travelers on August 28, 2019 and was late to work as a result.

19.     Two days later, Plaintiff was called into a meeting with the District Manager, Chelsea Kephart, and Mr. Betz. In the meeting, which was documented in writing by Defendants, Plaintiff was chastised for her conversation and appeal with Travelers and Ms. Kephart actually demanded to inspect Plaintiff's personal cell phone and call log. In the meeting, when pressed, Plaintiff indicated that she was appealing her worker's compensation determination and that she had contacted an attorney and also involved an ombudsman. Ms. Kephart got very ugly towards Plaintiff and accused Plaintiff of being unprofessional to the Traveler's insurance agent (off work premises and while off the clock). Ms. Kephart said that Plaintiff was a burden to the team and told her that she should consider going out on disability or FMLA since she could not get her restrictions removed. That transitioned into a conversation about required work breaks and Plaintiff indicated that if Defendants would follow the law and its own policy concerning regular workplace breaks and rotate her off the register as per its rotation policy that applied to everyone else, she could work with her current restrictions. Plaintiff asked if her job was being threatened. In response, Ms. Kephart told Plaintiff that it was an at-will employment state and Plaintiff could be fired without cause. Plaintiff responded saying that she felt she was being retaliated against for engaging in protected activity and felt like she was being treated negatively compared to other employees.

4

20.     Shortly thereafter, Plaintiff's hours were reduced.

21.     Upon information and belief, Ms. Kephart had a pattern and practice of retaliating against employees who engage in protected activity, especially as it related to health. For example, she previously told all employees that if any use the human resources hotline, they would be terminated.

22.     On September 14, 2019, Plaintiff became ill with a stomach bug. She communicated that to Mr. Betz in the customary way and followed all practices that had been in the place in the past concerning absenteeism.

23.     On her next scheduled workday, September 16, 2019, Plaintiff returned to work and Mr. Betz asked her if she had a doctor's note concerning her stomach bug, saying, "did you pay the $159 and go to the urgent care to get a doctor's excuse?" In the past, Plaintiff had never been required to furnish a doctor's note for a one-day absence and Mr. Betz never told her on September 14, 2019 that this absence was any different.

24.     Plaintiff worked the remainder of that week and then when Plaintiff reported to work on September 20, 2019, she was not assigned a register or radio and Ms. Kephart was at the store. She was then called in to a meeting. Plaintiff asked if they were meeting to discuss her absence on September 16, 2019 and Ms. Kephart immediately handed her termination paperwork. The paperwork said that Plaintiff was being terminated for being "unable to create a positive work environment."

25.     Defendants' termination reason is false and, in any event, did not motivate the termination.

26.     Following her termination, Plaintiff's hands were further tested and the following conclusions were given to her: she had diffuse arthritic changes in both hands, arthritis of the CMC

5

joint, and osteoarthritis and may be manifesting symptoms of carpal tunnel syndrome. Plaintiff was unable to get a complete diagnosis because she had no money to see a physician, especially after her claim was denied and after her termination.

27.     Plaintiff has also participated in physical therapy relating to her hands, which have grown weaker over time and which have continued to exhibit issues.

28.     Plaintiff's physical impairment significantly interferes with or substantially limits her major life activities, including her ability to use her hands and perform manual tasks, and her musculoskeletal system.

29.     As a result of Defendants' actions as described herein, Plaintiff suffered damages.

## V. CAUSES OF ACTION

### Common-Law Retaliatory Discharge

30.     By requesting Defendants to provide medical care for her workplace injury and by filing a claim for worker's compensation benefits, Plaintiff exercised her rights under the Tennessee Workers' Compensation Act.

31.     Plaintiff's attempt to exercise her workers' compensation rights was a substantial motivating factor in Defendants' decision to terminate her employment.

32.     In terminating Plaintiff for exercising her workers' compensation rights, Defendants are guilty of common-law retaliatory discharge, and its actions are in clear violation of important Tennessee public policy.

### Tennessee Disability Act—Alternative Claim

33.     The following claim is an alternative pleading due to the current state of the law.

34.     Plaintiff had a disability, had a record of a disability, or was regarded as having a disability by Defendants.

6

35. Plaintiff was qualified to perform her position.

36. To the extent that Plaintiff had a disability (or record thereof), she was discriminated against on account of her condition.

37. To the extent that Plaintiff did not have a disability, she was regarded as having a disability and was discriminated against as a result.

38. Defendants also employed an unlawful qualified standard. They did not want to have employees with any medical restrictions and demanded that Plaintiff get the same removed. They then discriminated against and retaliated against her as a result. The standard they employed is also a 100% healed standard that is per se unlawful under the Tennessee Disability Act and related law[2] and also tends to have the effect of screening out individuals with disabilities.

39. Plaintiff complained of the discrimination and disparate treatment she received and was retaliated against as a result.

40. Defendants' actions violated the Tennessee Disability Act, Tenn. Code Ann. § 8-50-103, et al., and all related laws.

## VI. DAMAGES

41. Plaintiff has suffered damages as a result and asks for all damages allowed by law.

## VII. PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays:

a. That proper process be issued and served upon Defendant, and that Defendant be required to answer within the time prescribed by law;

---

[2] Plaintiff is simultaneously filing a charge of discrimination with the EEOC and, once she has exhaustive administrative remedies, will assert claims under laws that prohibit unlawful qualification standards and contain additional requirements upon employers.

7

b.       That the Court issue an injunction requiring Defendants to re-employ Plaintiff at her former position or at an equivalent job with all employment rights and benefits to which she would have been entitled but for her discharge, and without harassment or illegal conditions imposed on her job, or, in the alternative, front pay and benefits in lieu of reinstatement;

c.       That Plaintiff be awarded judgment for damages for lost wages and the value of all employment benefits, including insurance, which she has lost from the date of Defendants' unlawful action;

d.       That Plaintiff be awarded additional compensatory damages, including damages for humiliation and embarrassment;

e.       That Plaintiff be awarded punitive damages;

f.       That Plaintiff be awarded attorney's fees as permitted by law;

g.       That Plaintiff be awarded all other damages which the Court deems proper or that are allowed by law; and

h.       That this case be tried to a jury.


Respectfully submitted,

MIKEL & HAMILL, PLLC

By: _____
       Donna J. Mikel, BPR# 020777
       Attorney for Plaintiff
       620 Lindsay Street, Suite 200
       Chattanooga, TN 37403
       Phone - (423) 541-5400
       Fax – (423) 541-5401
       Email–dmikel@mhemploymentlaw.com


8

# IN THE CHANCERY COURT OF HAMILTON COUNTY, TENNESSEE

| | | |
|---|---|---|
| LAURA MEALEY, | ) | NO. 20-0024 |
| Plaintiff, | ) | |
| | ) | JURY DEMANDED |
| vs. | ) | |
| | ) | |
| ALDI, INC. and | ) | |
| ALDI, INC. (TENNESSEE), | ) | |
| | ) | |
| Defendants. | ) | |

## COST BOND

The undersigned acknowledges and hereby binds the undersigned for the payment of all costs in this court which may at any time be adjudged against the plaintiff in the event said plaintiff shall not pay the same if so ordered by this court.

Witness my hand this _24th_ day of _January_, 2020.

Respectfully submitted,

MIKEL & HAMILL, PLLC

By: _____
Donna J. Mikel, BPR# 020777
Attorney for Plaintiff
620 Lindsay Street, Suite 200
Chattanooga, TN 37403
Phone - (423) 541-5400
Fax – (423) 541-5401
Email–dmikel@mhemploymentlaw.com

RECEIVED
2-28-20
Clerk & Master



# IN THE CHANCERY COURT OF HAMILTON COUNTY, TENNESSEE

| | | |
|---|---|---|
| LAURA MEALEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | NO. 20-0074 |
| v. | ) | |
| | ) | JURY DEMAND |
| ALDI, INC. and | ) | |
| ALDI, INC. (TENNESSEE), | ) | PART 2 |
| | ) | |
| Defendants. | ) | |

## AGREED ORDER CONCERNING DEFENDANTS'
## FIRST RESPONSIVE PLEADING

Come now the parties hereto, by their respective counsel of record, to inform the Court of the following agreement regarding Defendants' first responsive pleading.

The Complaint in this matter was filed with this Court on or about January 24, 2020 and was served on Defendants on January 29, 2020. Plaintiff has filed a Charge of Discrimination with the federal Equal Employment Opportunity Commission (EEOC) and is planning to amend the Complaint upon receiving a Right to Sue Notice from the EEOC to add federal law claims. The parties have agreed that Defendants may wait to file their first responsive pleading in this matter until after Plaintiff has filed and served the Amended Complaint. Defendants' deadline to file such pleading will be subject to the applicable Rules of Civil Procedure.

Plaintiff's counsel has agreed to promptly send the EEOC a copy of the Complaint and to request the EEOC to issue a Right to Sue Notice based upon this pending litigation and to waive its 180-day investigation policy, provided that such requests will not prejudice Plaintiff. Defendants have agreed not to use against Plaintiff in any manner the fact that she has requested her right-to-sue without permitting her Charge to pend for 180 days. The parties also have agreed that if the EEOC does not issue the Right to Sue Notice within 30 days of Plaintiff's request for same or if the EEOC refuses to waive its 180-day investigation policy, Plaintiff may proceed

20 FEB 28 PH 1: 14

FILED

with serving written discovery upon Defendants through their counsel of record as indicated below. Defendants do not waive any objections to such discovery that otherwise would be available to them under state or federal law.

It is so ORDERED this 28th day of Feb, 2020.

_____
The Honorable Jeffrey M. Atherton, Chancellor

APPROVED FOR ENTRY:

**MIKEL & HAMILL PLLC**

By: _Donna Mikel_ s/w/p Stacie Caraway
　　　Donna J. Mikel, BPR No. 020777

620 Lindsay Street, Suite 200
Chattanooga, TN 37403
Telephone: (423) 541-5400
Facsimile: (423) 541-5401

*Attorneys for Plaintiff Laura Mealey*

-and-

**MILLER & MARTIN PLLC**

By: _Stacie Caraway_
　　　Stacie L. Caraway, BPR No. 017287

Suite 1200, Volunteer Building
832 Georgia Avenue
Chattanooga, TN 37402
Telephone: (423) 756-6600
Facsimile: (423) 785-8480

*Attorneys for Defendants Aldi, Inc. and Aldi, Inc. (Tennessee)*

On this 28th day of February, 20 20. I certify that a copy of this order was mailed to the parties or their counsel.

ROBIN L. MILLER, CLERK & MASTER

By ULD _2N_ DC&M

IN THE CHANCERY COURT OF HAMILTON COUNTY, TENNESSEE

| | |
|---|---|
| LAURA MEALEY, | ) |
| Plaintiff, | )    NO. 20-0074 |
| | ) |
| vs. | )    JURY DEMANDED |
| | ) |
| ALDI, INC. and | )    PART II |
| ALDI, INC. (TENNESSEE), | ) |
| | ) |
| Defendants. | ) |

## FIRST AMENDED COMPLAINT

Comes Plaintiff and sues Defendants Aldi, Inc. and Aldi, Inc. (Tennessee) (collectively referred to herein as "Defendants" or "Aldi") for damages up to $2,000,000[1] for retaliatory discharge and violations of the Tennessee Disability Act, Tenn. Code. § 8-50-103, et seq. ("TDA"), and the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq. ("ADA"). Plaintiff would show unto the Court as follows:

### I. JURISDICTION

1.    Jurisdiction of this Court is invoked pursuant to Tenn. Code Ann. §16-10-101, §8-50-103, §4-21-311 and 42 U.S.C. § 12101 et seq..

### II. NATURE OF PROCEEDING

2.    This action is brought by Plaintiff to secure redress for common-law retaliatory discharge and for violations of the TDA and the ADA.. This action seeks injunctive relief, compensatory damages, back pay, front pay, punitive damages, damages for humiliation and

---

[1] Plaintiff includes this monetary demand because by law she is required to include a demand to set a ceiling for the damages she can recover in her lawsuit. In reality, her damages are difficult to calculate at this early juncture because they are dependent upon a number of facts that evolve over time and certain elements of damages are reserved for calculation by the jury.

2020 APR 29 AM 10: 45

FILED
HAMILTON CO CLERK & MASTER

embarrassment, court costs, attorney's fees and expenses, and all other relief to which Plaintiff may be entitled.

## III. THE PARTIES

3.   Plaintiff is a resident of Hamilton County, Tennessee.

4.   Defendant Aldi, Inc. is a Tennessee corporation conducting business, among other places, in Hamilton County, Tennessee.  Defendant's operations are sufficient to qualify it as an "employer" under the TDA and the ADA.

5.   Defendant Aldi, Inc. (Tennessee) is a Tennessee corporation conducting business, among other places, in Hamilton County, Tennessee.  Defendant's operations are sufficient to qualify it as an "employer" under the TDA and the ADA.

6.   The acts complained of herein took place in Hamilton County, Tennessee.

## IV. FACTUAL BASES OF PLAINTIFF'S CLAIM

7.   Plaintiff was employed by Defendants as a store associate at Defendants' grocery store in Ooltewah, Tennessee from August 14, 2018, until her termination on September 20, 2019.

8.   On or about July 21, 2019, Plaintiff sustained a workplace injury, which was immediately reported to management.

9.   The injury Plaintiff experienced was to her hands.  While working, they started to burn and tingle and then became numb.  The sensation then moved up into Plaintiff's arm and she could not grasp an item.  Her fingers also swelled and the muscle tendons in her thumbs began throbbing.  Plaintiff believed this occurred because she was constantly using the cash register without being rotated off or taking required and requested breaks.  She began having tingling and pain in her hands for several months before this more acute incident when she was working the register for long periods without breaks.

2

10.    Plaintiff asked if she could fill out a report concerning her workplace injury and Aldi did not have appropriate forms available. Rather, one of Plaintiff's supervisor asked her to dig through the office to try and find one and then another supervisor later criticized her, saying she used the wrong form. Just filling out the forms turned out to be a big debacle because Aldi did not have a clear policy/plan regarding reporting of comp injuries.

11.    Plaintiff sought medical treatment on July 25, 2019 for her injury and was diagnosed by a nurse practitioner as having carpal tunnel syndrome relating to the repetitive work Plaintiff performed on the cash register without receiving regular work breaks. This medical provider placed minor restrictions on Plaintiff, including that she be rotated off the register every 4 hours to get a break from the repetitive motion.

12.    Defendants' management made several disparaging comments about Plaintiff's workplace accident and her related restrictions.

13.    Defendants' management likewise refused to follow Plaintiff's restrictions at times and demonstrated a negative attitude about her restrictions.

14.    Plaintiff's claim was initially denied on August 12, 2019 by Defendants' insurer, Travelers. At that time, Defendants' manager, Mark Betz, told Plaintiff, "I want you to get those restrictions removed" and said he did not care how she did it.

15.    Prior to her workplace accident, Plaintiff enjoyed a positive rapport with Ms. Betz and frequently volunteered to take on extra shifts and work.

16.    Following her workplace accident, the behavior of Plaintiff's supervisors noticeably cooled toward her and she was subjected to heightened scrutiny.

3

17.     Plaintiff attempted to appeal the worker's compensation denial.  When Travelers would not return her calls, Plaintiff had to involve a state worker's compensation ombudsman to assist her in ensuring that the claim was appealed.

18.     During that process, Plaintiff had to engage in numerous attempts to contact Travelers.  She was finally able to reach Travelers on August 28, 2019 and was late to work as a result.

19.     Two days later, Plaintiff was called into a meeting with the District Manager, Chelsea Kephart, and Mr. Betz.  In the meeting, which was documented in writing by Defendants, Plaintiff was chastised for her conversation and appeal with Travelers and Ms. Kephart actually demanded to inspect Plaintiff's personal cell phone and call log.  In the meeting, when pressed, Plaintiff indicated that she was appealing her worker's compensation determination and that she had contacted an attorney and also involved an ombudsman.  Ms. Kephart got very ugly towards Plaintiff and accused Plaintiff of being unprofessional to the Traveler's insurance agent (off work premises and while off the clock).  Ms. Kephart said that Plaintiff was a burden to the team and told her that she should consider going out on disability or FMLA since she could not get her restrictions removed.  That transitioned into a conversation about required work breaks and Plaintiff indicated that if Defendants would follow the law and its own policy concerning regular workplace breaks and rotate her off the register as per its rotation policy that applied to everyone else, she could work with her current restrictions.  Plaintiff asked if her job was being threatened.  In response, Ms. Kephart told Plaintiff that it was an at-will employment state and Plaintiff could be fired without cause.  Plaintiff responded saying that she felt she was being retaliated against for engaging in protected activity and felt like she was being treated negatively compared to other employees.

4

20. Shortly thereafter, Plaintiff's hours were reduced.

21. Upon information and belief, Ms. Kephart had a pattern and practice of retaliating against employees who engage in protected activity, especially as it related to health. For example, she previously told all employees that if any use the human resources hotline, they would be terminated.

22. On September 14, 2019, Plaintiff became ill with a stomach bug. She communicated that to Mr. Betz in the customary way and followed all practices that had been in the place in the past concerning absenteeism.

23. On her next scheduled workday, September 16, 2019, Plaintiff returned to work and Mr. Betz asked her if she had a doctor's note concerning her stomach bug, saying, "did you pay the $159 and go to the urgent care to get a doctor's excuse?" In the past, Plaintiff had never been required to furnish a doctor's note for a one-day absence and Mr. Betz never told her on September 14, 2019 that this absence was any different.

24. Plaintiff worked the remainder of that week and then when Plaintiff reported to work on September 20, 2019, she was not assigned a register or radio and Ms. Kephart was at the store. She was then called in to a meeting. Plaintiff asked if they were meeting to discuss her absence on September 16, 2019 and Ms. Kephart immediately handed her termination paperwork. The paperwork said that Plaintiff was being terminated for being "unable to create a positive work environment."

25. Defendants' termination reason is false and, in any event, did not motivate the termination.

26. Following her termination, Plaintiff's hands were further tested and the following conclusions were given to her: she had diffuse arthritic changes in both hands, arthritis of the CMC

5

joint, and osteoarthritis and may be manifesting symptoms of carpal tunnel syndrome. Plaintiff was unable to get a complete diagnosis because she had no money to see a physician, especially after her claim was denied and after her termination.

27.     Plaintiff has also participated in physical therapy relating to her hands, which have grown weaker over time and which have continued to exhibit issues.

28.     Plaintiff's physical impairment significantly interferes with or substantially limits her major life activities, including her ability to use her hands and perform manual tasks, and her musculoskeletal system.

29.     As a result of Defendants' actions as described herein, Plaintiff suffered damages.

## V.  CAUSES OF ACTION

### Common-Law Retaliatory Discharge

30.     By requesting Defendants to provide medical care for her workplace injury and by filing a claim for worker's compensation benefits, Plaintiff exercised her rights under the Tennessee Workers' Compensation Act.

31.     Plaintiff's attempt to exercise her workers' compensation rights was a substantial motivating factor in Defendants' decision to terminate her employment.

32.     In terminating Plaintiff for exercising her workers' compensation rights, Defendants are guilty of common-law retaliatory discharge, and its actions are in clear violation of important Tennessee public policy.

### Violations of the TDA and the ADA—Alternative Claims

33.     The following claim is an alternative pleading due to the current state of the law.

34.     Plaintiff had a disability, had a record of a disability, or was regarded as having a disability by Defendants.

6

35.     Plaintiff was qualified to perform her position.

36.     In the alternative, Plaintiff was qualified to perform the essential functions of her job with or without accommodation.

37.     To the extent that Plaintiff had a disability (or record thereof), she was discriminated against on account of her condition.

38.     To the extent that Plaintiff did not have a disability, she was regarded as having a disability and was discriminated against as a result.

39.     Defendants also employed an unlawful qualified standard. They did not want to have employees with any medical restrictions and demanded that Plaintiff get the same removed. They then discriminated against and retaliated against her as a result. The standard they employed is also a 100% healed standard that is per se unlawful under the TDA and the ADA and also tends to have the effect of screening out individuals with disabilities.

40.     Plaintiff complained of the discrimination and disparate treatment she received and was retaliated against as a result.

41.     Defendants' actions violated the TDA and the ADA.

42.     In the alternative, Plaintiff was also denied a reasonable accommodation by Defendants and Defendants refused to engage in the interactive process with her. Reasonable accommodations would have included (but were not limited to) accommodating Plaintiff's restrictions to the extent Defendants' policies did not already require that, providing Plaintiff with breaks and rotations, etc. This denial of accommodation and refusal to engage in the interactive process both violate the ADA.

## VI. DAMAGES

43.     Plaintiff has suffered damages as a result and asks for all damages allowed by law.

7

## VII. PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays:

a.      That proper process be issued and served upon Defendant, and that Defendant be required to answer within the time prescribed by law;

b.      That the Court issue an injunction requiring Defendants to re-employ Plaintiff at her former position or at an equivalent job with all employment rights and benefits to which she would have been entitled but for her discharge, and without harassment or illegal conditions imposed on her job, or, in the alternative, front pay and benefits in lieu of reinstatement;

c.      That Plaintiff be awarded judgment for damages for lost wages and the value of all employment benefits, including insurance, which she has lost from the date of Defendants' unlawful action;

d.      That Plaintiff be awarded additional compensatory damages, including damages for humiliation and embarrassment;

e.      That Plaintiff be awarded punitive damages;

f.      That Plaintiff be awarded attorney's fees and expenses as permitted by law;

g.      That Plaintiff be awarded all other damages which the Court deems proper or that are allowed by law; and

h.      That this case be tried to a jury.

8

Respectfully submitted,

MIKEL & HAMILL, PLLC

By: _____
Donna J. Mikel, BPR# 020777
Attorney for Plaintiff
620 Lindsay Street, Suite 200
Chattanooga, TN 37403
Phone - (423) 541-5400
Fax – (423) 541-5401
Email–dmikel@mhemploymentlaw.com

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing was duly served via U.S. mail and/or electronic mail upon all parties at interest as follows:

Stacie L. Caraway, Esq.
Attorney for Defendants
Miller & Martin PLLC
832 Georgia Ave., Suite 1200
Chattanooga, TN 37402
Email: stacie.caraway@millermartin.com

This 29th day of April, 2020.

_____

9